I am Pat Flaherty from Great Falls, Montana, representing the Appellant Wesley Higgins. The argument I have today is a very difficult argument to confine myself to the record and bring the argument before this Court that summary judgment was inappropriate when my client was denied discovery when Judge Marler set a trial setting contemplating discovery. The most significant statement in the record found at excerpt of Record 155 is this statement under oath by Mr. Higgins filed just days before the summary judgment hearing. He stated, if I were given the conduct of some discovery, I believe that I will prove by admissions of Ray Scott, the client of my colleague here, that he acquired a controlling interest in the company through misrepresentation, that he abused the corporate form, that he has siphoned business assets off into his own use and has, through deceptive business practices, rendered Vortex a shell corporation, and he has made material misrepresentations to the Court in his pleadings. Now, Judge Marler would not allow the written discovery to be answered, nor depositions to be taken, nor documents that were requested to be produced. And I understand that the controversy between the cases of Kidwell, which seems to say once you lose your involuntary bankruptcy, there is a presumption that you get awarded your fees for defending it, and then the other cases, the scrap metal and its progeny, seem to require a totality of circumstances to be looked at, including amongst that totality of circumstances we look at the good faith of the petitioning creditors. In summary judgment, there should be no doubt but that there is good faith here. In fact, Judge Marler finds that the case was well fought, that there was eight to ten creditors. So there's no issue but that we've got good faith. On summary judgment, it should be regarded that it was a close call following the CompuHouse rationale. But on the issue of the debtor's misconduct and the debtor's failure to provide financial information, that is a real key factual finding that we were prejudiced in. We would think that the trial court would want to have all of the relevant evidence come in before it. I'm going to start you. Would you agree that the two subsections distinguished between, as the Kidwell case points out, between one in which good faith, subsection two, excuse me, subsection one, bad faith is not an issue. Bad faith comes in when you're seeking punitives and additional. So that there's a two-tier structure here and that these fees were awarded under subsection one, or little i, right? Correct. Okay. So then what you're saying, as I understand it, is that we should adopt, ratify this totality of the circumstances approach. And having done so, then you would be entitled to discovery to prove the totality circumstances enumerated, or however we define them, and that you were denied that opportunity. Yes, sir. Okay. But if we followed the Kidwell approach and what, to the extent the bankruptcy court did here, that presumed it's essentially your cost of having, your risk of having initiated a chapter seven, an involuntary chapter seven, Congress intended that, we'll give you that opportunity to come in early in the process, but just beware. If you don't win, sort of echoes of the case we just argued, you will wind up paying fees and costs. And that should be, that's it. It's pretty straightforward. And that's how the court arguably approached it here. Although he did seem to look at some of the circumstances. I agree. And that's a little bit confusing, because if he's just going to follow a straight Kidwell that you lost, therefore you owe the money, why does he pay lip service to these other cases and the totality test? Well, because there is in the statute a provision for discretion. It says may. So I take it you're not arguing that it should be automatic if it says may, and therefore it isn't in Congress for a bankruptcy judge to give some attention to the specifics of the cases the bankruptcy judge did here. Your argument has to be, I assume, that totality required a more structured analysis than was undertaken here. Is that correct? Yes. There was some analysis here. There was clearly an exercise of discretion. Yes. Counsel, I'm not sure what your discovery would be aimed at. Really the issue is, was the reputed debtor insolvent or not insolvent? Now, what you would be discovering would be all this nefarious conduct, which maybe would have some other remedy in a breach of contract or tortious something or other, but it seems to me that what was happening here was to use the mechanism of trying to put someone into involuntary bankruptcy in order to get their attention and bring them to terms, but that they weren't necessarily insolvent. Thank you for asking that question. And the record, Judge Fletcher, contradicts that that's the reason that they were put in bankruptcy to try to get their attention. The affidavits of the bankruptcy attorney Mike McGrath and Wes Higgins say that these people are trying to get the bill paid, so it's not an ulterior motive. Like Kidwell, Kidwell that Judge Fisher just mentioned, the judge there found that there was misrepresentation in filing the petition. The second ground that Judge Marler dismissed the involuntary on was that we couldn't prove that the debtor was insolvent. Here is where I'm having a hard time keeping myself to the record, but what if we could prove with discovery that when Ray Scott filed his schedules, over $200,000 of what he represented as equity was loans that he lied about, that there was some additional debt out there that he wasn't disclosing? So then... Why would that be litigated in a fee award? Why wasn't that litigated? Why wasn't, isn't there a mechanism to litigate that in the course of the bankruptcy proceeding itself? Sure, sure. But he did try to get the discovery earlier. Well, and if I can interrupt, what if we could have shown, as Mr. Higgins is saying here, that had we gotten that discovery, that there was $250,000 embezzled out of the company? You lost that on summary judgment. No, we were never allowed to get that discovery to get those documents and prove that. And so what happened on the merits? What happened on the merits? The judge said, I don't need to look at discovery because this case has been to the Ninth Circuit on whether or not Judge Olofsson abused his discretion in dismissing the involuntary. He says, there's a lot of documents here. I don't need to look at this other issue as to the totality. All right. What did Judge Olofsson do? Judge Olofsson dismissed the involuntary bankruptcy petition for two reasons. Dismissed it at what, 12B-6? Granted summary judgment? How? What was the mechanism? Motion to dismiss for failure to have three qualified creditors and failure to prove that the debtor was insolvent. So those were the fact issues that... Did he grant summary judgment against you? No, it was a motion to, excuse me, it was a motion to dismiss. So did you appeal that? Yes. And? It was affirmed at the BAP level and at the Ninth Circuit court level. Okay, so that's behind us. Right. That's the whole point. And now here we're on the issue of the fees. That's behind us. You say, what if? Well, that's history affirmed. The dismissal. Right. And we're not challenging what Judge Olofsson did, but there's a... Yes, you are, if you say, well, what if? No, we're challenging on the issue of 303-I-1 fees, the presumption arises that my client should have to pay the fees. Okay, so just, I may have thrown you off, but I want to clarify. So at this point you're saying that the subject matter of the fraudulent activity and the misstatements were not issues that could have been raised in the Chapter 7 petition proceeding itself, that they weren't because you never got to the... without the three bona fide creditors, you couldn't sustain the Chapter 7? In other words, I'm trying to understand why on the fee petition, absent this totality of the circumstances test, we're getting into the behavior and the conduct of the debtor. I mean, we just had a Chapter 7 that's been thrown out, and you're talking about engaging in costly discovery, which is going to eat up the assets of the supposed debtor. So that's what I'm trying to understand. Why turn a fee proceeding into a collateral attack on the bona fides of the debtor? It's not a collateral attack. It's a recognized defense to the fee proceeding, and in some of the cases that I've cited, such as Esquilante and Scrap House, even though the debtor lost, the bankruptcy court then went ahead and had a 27-day trial and a 12-day trial to say, let's look at whether or not you had some good faith grounds. Let's look at whether or not the debtor was obfuscating his financial records. Right. That's under some of those cases are under subsection 2, which is the bad faith, right? But that's your bad faith, not the debtor's bad faith. No, these are 303-I-1 cases, I believe, Your Honor. And so they operate under the totality of circumstances test.  So that's, again, that's what I'm trying to understand. So what you're saying is that on a fee motion, what we should say that under the subsection 1 proceeding, that it's fair game to go into the bona fides of the debtor to decide whether or not they're bad guys, and therefore that should affect whether or not you, as the creditor, who under 1 is going to have to pay the fees unless you can prove it, are entitled to go into that and trigger a 27-day trial on that? I would hope not a 27-day trial, but yes. Okay. And the basic underpinning is that if there is bad faith that amounts to being a fraud on the court, I would think that the court would want that sort of discovery to be allowed. And you get a little hint of this by critically examining the record. And let me just start to ask your investigative instincts to come alive here. I think they are. I think we're trying to be pretty alive up here. All right. I'm watching a little of that crime scene show lately, you know. And this is a big record. In Mr. Cox's brief, Excerpt of Record 407, he makes the remark that in a brief before Judge Olovson that there was a strong interest and a definite commitment of the debtor in a $250,000 loan. And that was a representation. And I think Judge Olovson relied upon that. But for this bankruptcy, there would have been a quarter-million-dollar loan to this business. But in that same excerpt of record, the banker that would be giving that loan was deposed. And at page 404 of the record, he says there was no such commitment. Now, that's we've got an interesting dynamic twist going here before. We've also got questions about records. Mr. Cox in his answer brief at page 5 says that there's no authority for Higgins to get records, even under Montana law. We put in the record a decision of Judge Stadler at Excerpt of Record 182, saying Higgins was supposed to get access to the records. But we've also explained in the record why he was never given access to these records. All I hear you doing is trying to relitigate the underlying case that you lost. And as Judge Marler pointed out, you pursued your appellate rights through two levels of appeal, losing at each level soundly. Losing was not a close call. And so I think that's in the books. That's over and gone. You know, you lost. And all of that stuff you're trying to relitigate the underlying merits of the original lawsuit. And here it's just a question of fees. So you want to relitigate the underlying case. No. But you lost. Yes. That's where that should have been done. And that's over and gone. Sure. And then we shouldn't even ñ if we follow that argument to its logical conclusion, because we've lost on having the involuntary petition dismissed, what defense does a petitioning creditor ever have, then, to say he should not have to pay fees under 303 I-1? Well, what did you argue to the judge? He said there was an argument. What was your argument? After argument, the court took the matter under advisement. What did you argue? The same thing you're arguing to us? Oh, no. I argued the same matters that are in the brief, that it was a close call that there were three valid petitioning creditors, that when the judge said the agreement that ñ Judge Olison speculated that the underlying agreement that formed the corporation, he said, was speculative. So you argued it was a close call. Yes. And the judge says, no, it wasn't. Closing was not a close call. So that was your first argument. Close call, judge concludes, no, it wasn't. What else did you argue? Okay, and that's on a summary judgment issue, too, when we have affidavits from at least the three petitioning creditors. What else did you argue? Good faith of the petitioning creditors. He says we're not holding good faith or bad faith against you. The court decided, he says here, that you didn't act improperly in bringing the action. But that's under the totality of ñ He doesn't hold that against you. That's under the totality of circumstances test. Then we argued that the debtor was insolvent and that he obfuscated his financial condition and that we should be allowed to get discovery into that to show ñ And he said that's over with. And you can't see that. And that's where I think he made a reversible error. So what you're saying is that when he said whether the debtor has been guilty of inequitable business practice at ER 26, that should have been open game for you under the totality of circumstances test. You should have been able to conduct discovery to prove that, and that should have been a relevant factor instead of his saying it was immaterial. Yes. And we went a little further on that. If you would look at Excerpt of Record 182, at the same time that this was going on, there was a creditor named Mr. Wilcox that was also involved in litigation showing some of the breach of fiduciary duty of this debtor, and that should have also tied in with the alleged prior bankruptcy, but we weren't allowed to take discovery to show that. It appears to me, based on what you said, that this memorandum decision says after argument, and then the judge addresses one after another all the grounds that you presented to that judge in order to try to defeat these feats. Is that right? I mean, this is what he was addressing. Close call, debtor insolvent, good faith, inequitable business practices offset, further discoveries required, bad faith. Those are the arguments you made. Yes, sir. And he addresses them in turn. Yes. So he addressed the totality of the circumstances that you presented to him. Well, he didn't, actually, because he didn't let you get into inequitable conduct, because he didn't say it was he said it was irrelevant. Correct. Criteria, I'm sorry. Correct. And on summary judgment, I addressed them one after another. He addressed them. Okay. Yes. So I just want to understand, then your point here is that we should adopt totality of the circumstances test and that under that test, inequitable business practices is a relevant factor, and if it's a relevant factor, you were entitled to discovery to prove it. Correct. Thank you. Thank you. Let's hear from the other side. You can respond. And be careful. We've got our investigative instincts really raging here. I will be. Thank you, Your Honors. Good morning. My name is Stephen Cox. I'm from Waterfall Economitas in Tucson, Arizona, and I'm appearing today on behalf of Vortex Fishing Systems, the appellee. This question today as to what tests should be applied in order to award fees under Section 303 I-1 is something that's come to the attention of the publishers recently. There's a new ALR Federal publication at 179 ALR Fed 549, and that discusses this entire area. So I think that also it presents the cases from the Ninth Circuit regarding this issue, and noticeably the three cases cited are all bankruptcy court decisions. There is no decision from either a district court or from this court. Is that the Kemper piece that you're reciting, Curtis Kemper Award of Attorney Fees, the ALR? That doesn't ring a bell, but, yeah. It's the 179 ALR Fed? Yes, ALR. Okay. I'm sure your staff has found that one long ago. But that was published, I think, in 2002, so it is recent. That's not your brief, is it? No, it's not. I apologize for that, but it was not in the brief. There are three cases. There's a 1982 case, In re Grecian Heights, 27 BR 172, and that's where the court says that if the three requirements of Section 303 I-1 are met, that is there was a dismissal without consent and the debtor did not waive his claim to fees, then the debtor is entitled to an award and a recovery of the fees and costs incurred in defending the involuntary petition. Just the reason I wanted to clarify what you're reciting, the excerpt I've looked at summarizes the law where the court, in exercising its discretion with respect to an award of attorney's fees under 303, following the dismissal of an involuntary bankruptcy, must consider the totality of the circumstances in the case, at least in the absence of a finding that the creditors acted in bad faith. Now, is that an overstatement of what the law is? I believe that as to the Ninth Circuit case law that we have right now, yes, it is an overstatement. Is that something that we should adopt? I'm here today to say no. I don't think you should. I think that the totality of the circumstances brings in such a huge ball of wax, and litigants these days are getting more and more intense as to their approach to cases, even though the ethics have been changed to change zealous to professional or whatever. I think totality of circumstances is too broad, and what I would urge this court to adopt is something along the lines of the three bankruptcy court cases here in the Ninth Circuit, particularly in Ray Kidwell, where Judge Klein does adopt the standard. As I read it, it's sort of a ‑‑ I think it's referred to as a rebuttable presumption standard. Whatever it is, basically it's not unlike the standard of Section 362D, where if you're trying to lift stay, all the creditor has to prove that there's no equity. Once the creditor proves that, the creditor is entitled to relief, unless the debtor can prove other things and reasons why relief shouldn't be granted. Very similar here. Once the debtor proves the three requirements, dismissal, without consent, and no waiver of the right to recover fees, then the burden should shift or the obligation or, yeah, the burden shifts then to the creditors to show, well, wait a minute, don't award them fees because. Well, but see, here's the problem I have. I appreciate your candor in this, too, and not knowing bankruptcy practice all that well, but knowing enough about it to be dangerous and having been burned. Here's my question. Chapter 7 is involuntary. The creditors, as I understand it, except kid will is an accurate statement, are given an opportunity to come in, but the tradeoff was that they come in early, but the tradeoff is that if they are unsuccessful, the fees are at risk. So that's a debtor protection mechanism. So then you're saying, okay, what we should do then is grant the fees, but they're rebuttable or it's a burden shifts or whatever it is. But then we're left with a question, well, what is the bankruptcy court supposed to do in terms of deciding what the relevant considerations are? Judge Marler in this case went through and, as Judge Trott pointed out, ticked off and dealt with the arguments that were made. But he did say inequitable conduct was immaterial. So should we, what guidance should we be giving to bankruptcy courts, even under your approach that says if you're going to look at the arguments of the creditors as to why fees shouldn't be awarded in this particular case as a matter of the court's discretion, what is the structure, what are the factors that should be taken into account? You're saying don't go totality of the circumstances. Just shifting the burden back to the creditors doesn't give any structure. It just says, okay, now they get a chance to argue, but what is it that they're supposed to argue? I agree. I agree with you completely. And the answer is just say we look to the totality of the circumstances is too broad. But the guidance that I think should be provided to bankruptcy courts and to litigants is not unlike what's set forth in the scrap metals case, where the court says at page 167, I believe, at 233 Bankruptcy Reporter, that there are two relevant factors to award fees. One is the overall merit of the petition. In other words, how close a call was it? And number two, was there misconduct by the debtor in the involuntary proceedings that somehow helped cause the dismissal of the involuntary petition? That would be, in effect, bad faith by the debtor. And I think that would come into effect then in awarding fees under 303-I-1. Let me expand that a little bit. Bad faith by the debtor. You essentially agree with the creditors in this case that inequitable conduct would have been irrelevant. The problem with making a statement like that is the conclusion you make. I do not agree with what they say. I think it's somewhat more limited. I don't think that the misconduct by the debtor in some litigation across the country has anything to do with the involuntary bankruptcy in awarding fees. But the hypothetical that was posed to us by opposing counsel was, what if they could show that there was fraud on the bankruptcy court, misaligned about $200,000 of assets? That would be within the bankruptcy, and that would be proper misconduct would be subject to inquiry? Yes. If it was any conduct by the debtor that somehow precipitated the dismissal, it is a fraud on the court. It is a problem. And therefore, yes, it would be something the court would look to. It's not the totality of the circumstances, though. It's what happened in those proceedings. In this case, that did not happen, by the way. Now, opposing counsel is telling us if he'd been given discovery, he thinks he could show that. Well, Your Honor. That's what I heard him say, too. Yes, I heard him say that also. And I disagree with him completely. The litigation in this case was first handled by other counsel on behalf of Mr. Higgins. And Mr. Higgins was represented by Mr. McGrath out of the Mesh Clark firm in Tucson. We had a petition in voluntary bankruptcy. I filed an answer on behalf of the debtor and motion to dismiss. That matter went to a full-blown trial. We had numerous depositions. We had production of documents, piles of documents going both ways. We had 10 witnesses and 17 declarations. As Judge Olson liked to use, they were all declarations, but all witnesses had to be present for cross-examination, which they were. We ended up with 1,700 pages of record, and that was all in the first appeal before this court. And so there was a lot of work put into this case up front. I don't think there was any stone left unturned. And all the conduct of the debtor was scrutinized closely. This business that Mr. Flaherty is talking about, I don't see any diversion of assets. Mr. Scott thought that he had a $250,000 commitment for an SBA loan through a bank in Tucson. Upon deposition of Mr. Scott, that's what he testified. But upon deposition of the banker, the banker said there was no commitment. We talked about it, and, yes, the SBA was providing us the paperwork, but we hadn't committed to that. And, frankly, that didn't surprise me. I mean, the bank doesn't want to be committed until they've got the documents all signed up. And they weren't at that point. The bankruptcy stopped that from happening. So I don't see any diversion of assets. Well, when there's been a full-blown trial, as there was here, would we then be saying that there would have to be some type of after-acquired evidence that couldn't have been acquired before, before you'd let any further discovery take place? Would that be the kind of thing we should be looking to? I think to some extent that's correct, Your Honor, because the one thing that's talked about in the scrap metal buyer's case is that if there's misconduct by the debtor that actually led to the dismissal of the case, that's probably something that would come up afterwards. And in that event, yes, that would be something that you would look into. The difference in this case is that nothing raised by the petitioning creditors had any relevant bearing to what was being considered by Judge Marler. And I think Judge Marler, he went through the entire litany of factors that they raised. In fact, their list set forth on page 11 of the opening brief in this case, and there also, Your Honor, went through these previously. Judge Marler went through them point by point. And so he did consider each and every one of them. And he did consider whether, well, if we did have evidence on that matter, would it be relevant? Would it be helpful to making this decision about fees? And he decided at his discretion, no, it wouldn't. And I think that was an appropriate decision. In this case, in the award made of fees, was the bankruptcy court making an original award for fees on appeal, or were fees on appeal previously awarded and he was just incorporating them in this? No, there had been no prior award. Judge Oleson entered a rather unusual ruling, at least from my observation, he ruled that the case was dismissed and that the matter of fees and sanctions and that sort of thing would be held off until the dismissal was a final order. And that took over two years to get. And so once we got to that point, and I went back to Judge Marler now, because Judge Olson had passed away, we had now gone through a trial bankruptcy court and to appeal. So, yes, the whole package was presented to the judge at that time, one time. So that the bankruptcy judge was awarding fees on appeal? Correct. Did he have that authority? I cited numerous cases to the court as to why I believe he did have that authority, and they're in my brief near the end of the brief. And I think he did have that authority because this was not a matter of awarding legal fees. If you look at Section 303I1, this is not an award of fees and costs per se. This is an award of damages. And so when you don't know what the damages are until you've gone through that process. And we went through that process, then we came back to the bankruptcy court, and that's when the damages were properly awarded. So I think the court did have, because it was damages and not attorney's fees. How much was awarded for the appeals? Is it segregated out so we know? It wasn't broken down, and nobody requested it to be broken down. I would estimate it was somewhere between $8,000 and $10,000 per appeal. And if this court's going to trim that out, I just assume it would be done rather than this case be remanded. Because this thing's been going on for a long time. Your Honors, I want to point out something to you from a practical standpoint. I have just a couple minutes left. If the involuntary petition filed by petitioning creditors, if it wins, if it sticks, if it's permitted and it goes on, then the attorneys for the petitioning creditors are allowed a claim, which is essentially an administrative claim in the bankruptcy, and they are paid through the bankruptcy estate. That's under Section 507A2 of the Bankruptcy Code. We don't have any bankruptcy estate here, do we? No, but if the petition had been granted, there would be a bankruptcy estate. Yeah. And there would be a lot of it. That's now subject to other litigation and other things, of course. And so on that basis, if they're going to get paid their attorney's fees if they win, I think it's equally fair that debtor be paid his attorney's fees or at least recover a judgment for attorney's fees if the debtor wins. On the other hand, if you look at it from another way, if the creditor had simply gone to state court and sued this debtor on their contractual claim, and most of these petition creditors have contractual claims, then they would have had a claim for attorney's fees and would have recovered their attorney's fees through the state court proceeding. The flip side is if they'd lost, then they would have had to pay attorney's fees to the debtor in state court. So why should there be any difference in bankruptcy court? If they lost in bankruptcy court, they were not the prevailing party, they should pay the fees. What's the rule in Arizona about fees? Well, there's two. One, if you have a contractual provision, then it governs. And two. There would be no contractual provision, I assume, here. Oh, yes, there is. There's a contract between Mr. Higgins and Mr. Scott, and there's all kinds of things going on between them that were litigated in the first case. That provides for attorney's fees? Oh, boy. You got me. Okay. Most of them do. I don't remember specifically. So your argument has a few flaws. Yeah. Yeah. And then the second basis would be Arizona revised statutes 12-341.01, which says that in a disputed contractual action, the court can award fees to the prevailing party. So that basis is there, statutory or contractual. But you would say that then it would turn on whether the law of the state governs? Because some states, I don't think California in contract actions has a fee-shifting provision like that. It all has to depend on contract. Right, Your Honor. I'm kind of digging at the equity of the situation here. The question is, if the creditor can recover their fees, why shouldn't the debtor recover his fees if he prevails? And it's really that simple. It's a simple fairness point I'm making. Okay. Your Honor, I think Judge Klein in the Kidwell case has really put the position of the Ninth Circuit, I think, on the right track for how these cases should be handled. Judge Klein in the In re Kidwell case said that the award of fees to the successful debtor is the norm. In other words, once you prove those three things, that the case was dismissed, that there was no consent, that there's no waiver, then it's up to the petitioning creditors to show something, to show a justification as to why the attorney's fee should not be awarded to the debtor. I don't think it should be the broad anything goes deal, but it should be something that has to do with the involuntary proceedings. Was there some sort of inequitable conduct in that or some kind of fraud? And if not, then the fee should be awarded. Again, from the prior appeal you heard today, the fees have to be reasonable, and that's always a requirement in the bankruptcy court. And I suppose that the bankruptcy judge could control discovery very rigidly, because my concern of a totality test is that once you open up the equitable conduct, inequitable conduct, that there not be a circumstance where the losing creditor then uses the fee opposition as a way to hammer the estate in attorney fees by protracted litigation. The whole purpose is not to have a protracted litigation. I agree completely. This is a case where the two litigants were shareholders in one corporation. They fought over management. They fought over the agreements between them. They really didn't like each other, and they're going to be talking about what bad people they were when they were 10 years old. I mean, it's a sad thing, but that's the way these parties were. It's a little me like heck versus Humphrey in a 1983 context. So long as the underlying bankruptcy case was decided and stands, that's the end of that. And maybe Judge Fletcher is right. Only after acquired evidence could do something to change it, but then even maybe after acquired evidence we have to go back and reopen the bankruptcy. Well, that's the risk. Otherwise you just relitigate the whole thing all over again. And that's what we want to avoid, especially in this case when there was so much put into the first time around. And that's why I think that the Kidwell case was on target with the award of fees as the norm once you've met the requirements of the statute, and then the creditors have to come up with some darn good reason why they should not be assessed the fees against them. Anything else, counsel? One last thing, Your Honor. Regardless of what test the Court wants to adopt with regard to this, and I think we do need Deatonwood adopted here in the Ninth Circuit, I think that it's clear that Judge Marler did apply, excuse me, did approach this case in such a way that he considered all the things that were raised by the petitioning creditors. He says that right in his document. He does. He talks, and actually all the things that Mr. Flaherty refers to on page 11 of his brief where he says this is the things, the totality of circumstances that the judge should have looked at, that's what Judge Marler looked at. He looked at it right down the line and he answered all of them, and I think he dealt with them appropriately. I see I've got three seconds left, so unless there's any other questions. Thank you. Counsel? You may respond if you care to. Thank you, Your Honor. I did look at the agreement to form Corporation Excerpt of Record 132. There's no provision for the recovery of attorney's fees under contract. But to get discovery, to show that there has been fraud perpetrated on the Court, the discovery that we requested would be quite simplified. For example, and here I'm asking you to be the detective again, Mr. Cox in his answer brief at page 5 says there's no prior bankruptcy by Ray Scott. Mr. Higgins in his affidavit, Excerpt of Record 90, page 97, talks about a prior pattern of a bankruptcy. That's something that should be looked into. And here, Your Honors, is I hope I do not offend anybody, but if you've looked at this voluminous record, in the context of the record, he has Rule 11 motions against creditors, against non-parties, against lawyers. He sued the waterfront of anybody involved with this. You have in the record this Al Wilcox litigation of another person that claims to be victimized by him. And here's where ‑‑ please stop me if I'm ‑‑ I think you're getting bogged in the details, counsel. Well, what I would like to say is the discovery has been done. This fellow sued other competent people that have taken the discovery. And so I would like to just be able to put into the record the prior bankruptcy, the tax returns, the proof of what's happened. And I can show that what I'm saying, what I'm asking for can be shown. The court was made a victim of by Mr. Scott. Endless relitigation of a case that was already lost. Thank you, counsel. The case just argued is ordered submitted. All right. Thank you, Your Honor. Thank counsel for arguing. Peabody Western Coal versus the District Court, after which we'll take a short recess. No, no. After which. But that's okay. Everybody can stand up. It's a seventh inning break. Somebody sing the song.
judges: B. Fletcher,trott, Fisher